En el Tribunal Supremo de Puerto Rico

| EAGLE STAR INSURANCE COMPANY OF PUERTO RICO<br><br>    Recurrente<br><br>    .V<br><br>LA ESPERANZA SUGAR PLANTATION CORPORATION<br><br><br>    Recurrida | Revisión<br><br>TSPR98-41 |
|---|---|

Número del Caso: RE-94-447

Abogados Parte Demandante-Recurrente: Lic. Pedro Toledo González

Abogados Parte Demandada-recurrida: Lic. Griselle M. Robles Ortiz

Lic. Emilio Cancio-Bello
Lic. Enrique Peral Soler
Lic. José A. Vázquez

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Antonio L. Corretjer Piquer

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/7/1998

Materia: INTERPLEADER

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eagle Star Insurance Co.
of Puerto Rico

    Demandante-recurrente

      v.               RE-94-447      Revisión

La Esperanza Sugar Plantation
Corporation

    Demandada-recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico a 7 de abril de 1998

I

Entre el 18 de julio de 1984, y el 18 de diciembre de 1985, el **Banco Gubernamental de Fomento** prestó más de $1,600,000.00 a **La Esperanza Sugar Plantation Hotel Corp.**, con garantía de primera hipoteca sobre bienes inmuebles[1] y muebles.[2] El financiamiento exigía una póliza de seguro que cubriera daños por huracán. **La**

---

[1] Escritura de hipoteca Núm. 45 de 18 de julio de 1984 ante el notario Luis E. López Correa garantizando el principal de $1,500,000.00. Luego, la hipoteca se amplió mediante la escritura Núm. 8, de 27 de febrero de 1985 ante el mismo notario por la cantidad de $100,000.00. Ambas obligaciones se hicieron constar en pagarés a favor del portador. El 18 de diciembre de 1985, se suscribió un pagaré (Secured Promissory Note) por el total de $1,600,000.00 a favor del **Banco Gubernamental.**

[2] Hipoteca de bien mueble otorgada el 18 de diciembre de 1985.

**Esperanza** obtuvo dicha póliza, pero posteriormente no la renovó. Ante ese **incumplimiento**, y con notificación a **La Esperanza**, el 30 de noviembre de 1988, el **Banco Gubernamental** colocó las propiedades hipotecadas bajo su póliza maestra ("master policy") Núm. IM-300641[3] con la Eagle Star Ins. Co. of P.R., la cual protegía varias propiedades en que el **Banco Gubernamental** era acreedor hipotecario[4], y cuya póliza subsidiaria, pagaría en la eventualidad de que no existiera póliza principal.

**La Esperanza nunca realizó pago alguno del préstamo.** Así las cosas, conforme los términos de las escrituras antes mencionadas, el 23 de junio de 1989, el **Banco Gubernamental** declaró la deuda líquida y exigible, demandó en cobro de dinero y ejecución de hipoteca en el Tribunal Superior, Sala de Humacao, y eventualmente obtuvo sentencia a su favor.[5]

---

[3] Esta póliza aparece en el expediente identificada como IM-300641; IM-300-641; IM-3000641.

[4] Según Certificado de Seguro Núm. 006, los límites de cubierta fueron $1,747,000.00 para los bienes inmuebles y $59,300.00 para los muebles.

[5] Civil número CS89-882. Tomamos conocimiento judicial que el 11 de diciembre de 1990, el Tribunal Superior de Puerto Rico, Sala de Humacao (Hon. Aldo Segurola de Diego) dictó Resolución y Sentencia Parcial (Notificada y registrada el 17), reconociendo al **Banco Gubernamental** el crédito por la suma principal de $1,600,000.00, garantizada por hipoteca, y ordenando se ejecutara la propiedad, si no era satisfecha. Luego, el mismo tribunal, mediante Sentencia del 14 de febrero de 1991, notificada el 4 de marzo, reconoció el derecho del **Banco Gubernamental** sobre los intereses reclama-dos y garantizados por la misma hipoteca, ordenando su ejecución de ser necesario.

La venta judicial en cuestión se llevó a cabo el 15

Por su parte, el 1 de julio de 1989, **La Esperanza** adquirió póliza de seguro con la Eagle Star Ins. Co. (Núm. CPP-404-964) pero **no incluyó al Banco Gubernamental en sus endosos**.

En septiembre de 1989, el huracán Hugo en su trayectoria hacia Puerto Rico azotó la Isla Municipio de Vieques, causando daños a la propiedad de **La Esperanza**. Ello provocó la presentación de dos reclamaciones a Eagle Star Ins. Co., bajo las distintas pólizas de seguro aludidas. Al respecto, el 16 de enero de 1990, **La Esperanza** le reclamó $300,000.00 bajo la póliza Núm. CPP-404-964 mediante comprobante de pérdida suscrito y juramentado por su presidente Roberto López González. Indicó que, aparte del Sr. John Morrongiello, **nadie más tenía interés sobre la propiedad**.

Al tramitar dicha reclamación, la aseguradora Eagle Star Ins. Co. emitió el cheque Núm. 11258 a nombre de **La**

---

de junio de 1995 y el **Banco Gubernamental** fue el único postor adjudicándose la propiedad en <u>buena pro</u>.

Por otro lado, el 12 de junio de 1995, el Lcdo. Carlos Rodríguez Quesada, en su capacidad como Síndico Liquidador Federal de **La Esperanza**, presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de San Juan (Núm. KAC95-0747), solicitando la Nulidad de Sentencia y Procedimientos
(continúa...)

(...continuación)
de Ejecución en el caso núm. CS89-882 antes referido. Esta acción se trasladó al Tribunal de Primera Instancia, Sala Superior de Fajardo, en Humacao (Núm. NAC95-0132).

Oportunamente, ese Tribunal (Hon. Reinaldo de León Martínez) dictó Sentencia el 12 de abril de 1996, notificada el 19, en la que desestimó la demanda de nulidad. **Ese dictamen advino final y firme**.

**Esperanza y el Banco Gubernamental** por $150,000.00 en pago parcial bajo la póliza CPP-404-964 emitida a favor de **La Esperanza**. Sin embargo, como **La Esperanza** le informó que **no existía acreedor hipotecario para dicha propiedad**, este primer cheque fue anulado, y el 1$^{ro.}$ de febrero de 1990 se expidió un segundo (Núm. 11259), por la misma cantidad, **excluyendo al Banco Gubernamental**. Este cheque fue entregado y cobrado por **La Esperanza**.

A su vez, el **Banco Gubernamental** reclamó $255,000.00 a la Eagle Star Ins. Co. bajo la póliza maestra Núm. IM-300641, según comprobante de pérdida suscrito el 28 de marzo de 1990. Posteriormente, el 17 de abril, Eagle Star Ins. Co. emitió el cheque Núm. 12973[6] por $180,000.00 a **favor del Banco Gubernamental y La Esperanza**, como pago final de la reclamación bajo póliza Núm. CPP-404-964. Este cheque, entregado al **Banco Gubernamental**, fue devuelto a la aseguradora el 12 de julio de 1990, ya que a juicio del **Banco Gubernamental** debería hacerse sólo a su nombre bajo su reclamación en virtud de la **póliza maestra** Núm. IM-300641.

Así las cosas, Eagle Star Ins. Co. recibió dos Notificaciones de Embargo del Depto. del Tesoro Federal –Servicio de Rentas Internas–, por dinero adeudado por **La Esperanza**. El 6 de agosto de 1990, Eagle Star Ins. Co. solicitó al Tribunal Superior, Sala de San Juan, **petición**

---

[6] La Sentencia Parcial de Instancia identifica el cheque como el **12973**; pero las copias en los autos originales lo numeran 12972.

**sobre depósito de fondos** ("Interpleader"). Consignó los $180,000.00 y pidió al tribunal que determinara a cuál de los promovidos –**La Esperanza**, el **Banco Gubernamental** o el Servicio de Rentas Internas (Federal)–, le correspondía en derecho. El Sr. Morrongiello reclamó también parte de esos fondos, mediante demanda de intervención. El **Banco Gubernamental** y **La Esperanza** contestaron y formularon reconvención contra Eagle Star Ins. Co.

El 9 de abril de 1991, **La Esperanza** solicitó sentencia sumaria parcial a su favor. Pendiente dicha moción, **La Esperanza** se acogió al Capítulo 11 de la Ley de Quiebras Federal, 28 U.S.C. sec. 301. Se decretó la paralización de los procedimientos, pero posteriormente se reanudaron al desestimarse la petición de quiebra. En agosto de 1993, **La Esperanza** se acogió nuevamente a las disposiciones de la Ley de Quiebras.[7] Luego de varios trámites procesales, el ilustrado tribunal de instancia (Hon. Antonio L. Corretjer Piquer), dictó **sentencia sumaria parcial** a favor del **Banco Gubernamental**.[8] Concluyó que le correspondía la **totalidad**

---

[7] **La Esperanza** acudió ante nosotros mediante el recurso CE-94-666, alegando que la sentencia era nula por haberse emitido luego de una petición de quiebra. Este recurso lo declaramos no ha lugar por **incuria** el 29 de noviembre de 1994.

[8] De la sentencia parcial se desprende que **La Esperanza** y el Depto. del Tesoro Federal acordaron –con la anuencia de las otras partes– aceptar la validez de las Notificaciones de Incautación por impuestos federales no pagados y debidos. Las partes estipularon que:

"a.    Si el Tribunal determina que **La**

**del importe del seguro de riesgo**, al ocurrir el siniestro después de la constitución de la hipoteca. Determinó que Eagle Star Ins. Co. fue notificada previamente de la existencia del **Banco Gubernamental** como acreedor hipotecario y por aplicación del Art. 161 de la Ley Hipotecaria, le correspondía los $180,000.00, más intereses depositados en el Tribunal, en adición a $150,000.00, más los intereses legales desde la fecha en que hizo el pago indebido a **La Esperanza**. Concluyó que no existía razón, para posponer la resolución total del pleito y ordenó que se registrara la Sentencia Parcial. Eagle Star Ins. Co. y el interventor Morrongiello oportunamente solicitaron determinaciones de hechos y conclusiones de derecho adicionales y reconsideración. **La Esperanza** también pidió reconsideración. Estas mociones fueron declaradas no ha lugar.

A solicitud de Eagle Star Ins. Co., revisamos.[9]

---

**Esperanza** no tiene derecho alguno al dinero consignado y objeto de este pleito, entonces, el Departamento del Tesoro Federal no tendrá derecho a ninguna parte de la adjudicación;

b. Si este Tribunal determina que **La Esperanza** tiene derecho a cualquier parte del dinero consignado entonces, el Departamento del Tesoro Federal tendrá la prioridad con respecto a la cantidad otorgada a **La Esperanza** hasta que se satisfaga completamente su deuda contributiva;

c. El Departamento del Tesoro Federal no tendrá derecho a reclamar dinero que pueda ser otorgado a Eagle Star o al Banco como resultado de esta demanda."

[9] En su solicitud, imputa al foro de instancia error al

II

Coincidimos con el Tribunal de Instancia, que Eagle Star Ins. Co. of P.R. debe pagarle al **Banco Gubernamental** $150,000.00 (más intereses), suma igual al pago parcial previamente hecho a **La Esperanza**, además de los $180,000.00 pendientes de cobrar. Como acreedor, el **Banco Gubernamental** está protegido por varios preceptos de nuestra Ley Hipotecaria reguladores de la extensión de la hipoteca a lo concedido o debido al propietario por razón del seguro sobre la propiedad. Elaboremos.

Los Arts. 160 y 161 de la Ley Hipotecaria, en lo pertinente rezan:

> "**La hipoteca se extiende** a[l] ... importe de las indemnizaciones **concedidas o debidas al propietario** por los aseguradores de los bienes hipotecados...", (30 L.P.R.A. sec. 2556).

> "**[S]e entenderán hipotecados juntamente con la finca,** aunque no se mencionan en el contrato, siempre que corresponda al propietario:

> ...[l]as indemnizaciones concedidas o debidas al propietario de los inmuebles hipotecados, bien por el aseguramiento de éstos **siempre que haya tenido lugar el siniestro después de constituida la hipoteca...** Si cualquiera de estas indemnizaciones debiera hacerse efectiva **antes del vencimiento** de la obligación asegurada y **quien haya de satisfacerla hubiere sido notificado previamente de la existencia de la hipoteca** se depositará su importe en la forma que convengan

determinar que el pago de $150,000.00 hecho por Eagle Star Ins. Co. a **La Esperanza** correspondía al **Banco Gubernamental** y, en consecuencia, estuvo mal hecho; error al determinar que debe pagar nuevamente los $150,000.00 que pagó a **La Esperanza**, más interés legal a ser computado desde la fecha en que hizo dicho pago indebido.

los interesados o, a falta de tal convenio, en la que disponga el tribunal." (30 L.P.R.A. sec. 2557). (Enfasis suplido).

Bajo idénticos principios -Arts. 109 y 110 de la Ley Hipotecaria Española-, y sus antecedentes legislativos, los tratadistas españoles reconocen que **nuestro artículo 161 encierra dos disposiciones distintas**. Chico y Ortiz, J.M., Estudios sobre Derecho Hipotecario, T. II, 3ra. ed., Madrid (1994), págs. 1400 y ss.; Morrell y Terry, J., Comentarios a la Legislación Hipotecaria, T. III, 2da. ed., Madrid (1928), págs. 720 y ss.; De Cossío y Corral, A., Instituciones de Derecho Hipotecario, 2da. ed., Barcelona, (1956), págs. 348-349; Roca Sastre, R.M., y Roca-Sastre Muncunill, L., Derecho Hipotecario, T. IV, V. 1, 7$^{ma.}$ ed., Barcelona (1979), págs. 567-592; Compuzano y Horma, F., Principios Generales de Derecho Inmobiliario y Legislación Hipotecaria, T. II, 2$^{da}$ ed., Madrid (1941), págs. 148-154. Expongámoslas.

Como **norma general** las indemnizaciones concedidas o debidas al propietario de los inmuebles hipotecados por el aseguramiento, siempre que el siniestro **ocurra después** de constituida la hipoteca, **se entienden hipotecadas juntamente con la finca**. Por otro lado, cuando específicamente la aludida indemnización **deba hacerse efectiva antes de su vencimiento** y, el asegurador hubiere sido notificado previamente de la existencia de la hipoteca, el artículo 161 le obliga depositar su importe en la forma que convenga más a los interesados o a consignarlo en el Tribunal.

El caso de autos encaja en la situación general antes descrita: la hipoteca se constituyó cuatro (4) años **antes** del huracán que generó la indemnización. Debido a la natura-leza de la obligación asegurada, ésta se declaró líquida y exigible el 23 de junio de 1989, por falta de pago conforme los términos de las escrituras antes mencionadas, **casi tres (3) meses antes de dicho siniestro.**

El transcrito Art. 161 expresamente impone una obligación legal al asegurador, **antes** de vencida la obliga-ción; nada dice sobre el pago posterior. Nuestra Ley Hipotecaria  -igual que la española-[10] guarda silencio cuando la indemnización por seguro se hace efectiva **después** de vencida la obligación. Chico y Ortiz, Ob. cit., pág. 1400; Morrell y Terry, Ob. cit., pág. 727; Puig Brutau, Fundamentos de Derecho Civil, 3ra. edición, Barcelona, Bosch, 1983, T. II, Vol. 3, pág. 134.

Algunos tratadistas opinan que es irrelevante si la obligación está vencida o no para que active la subrogación real. Roca Sastre y Roca-Sastre Muncunill, Ob. cit., pág. 575, (nota al calce Núm. 2). Morrell, al interpretar una versión anterior equivalente a nuestro Art. 161 -que no

---

[10] Ante esta laguna, el 8 de octubre de 1980, España estableció en su artículo 40, que si el siniestro ocurre después de constituida la garantía, sin tomar en consideración el estado de la obligación garantizada, el asegurado debe comunicar al asegurador la constitución de la hipoteca. Así, el asegurador no puede pagar sin el consentimiento del acreedor hipotecario. Chico y Ortiz, Ob. cit., pág. 1401.

contenía expresiones sobre el vencimiento de la obligación, pero cuyo Reglamento recogía esa limitación-, **contesta tajantemente en la afirmativa que la hipoteca se extiende a tal indemnización**. El espíritu de la ley, aunque utilice la palabra "vencimiento", es cubrirlas. Lo determinante es que el siniestro ocurra luego de constituida la hipoteca y la indemnización se haga (o deba hacerse) antes de que se haga efectivo el crédito garantizado. No importa que el siniestro ocurra después de vencida la deuda. Morrell y Terry, Ob. cit., págs. 725-726. Si el crédito indemnizatorio nace vencida la obligación, pero antes de ser satisfecha, la hipoteca se extiende al crédito indemnizatorio por razón de siniestro. Blasco Gasco, F., La Extensión Objetiva Legal de la Hipoteca, Revista General de Derecho, Año L, Núm 592-593, págs. 17, 60-63 (1994). Morrell y Terry, Ob. cit., pág. 726.

Si bien el Art. 161 no menciona si el acreedor o deudor hipotecario deban notificarle al asegurador, el criterio se inclina a imponerle al acreedor interesado defender su derecho prioritario, y por ende, justificar y vigilar sus derechos sobre tales indemnizaciones. Morrell y Terry, Ob. cit., pág. 727; Roca Sastre y Roca-Sastre Muncunill, Ob. cit., pág. 578.2[11] Nuestra Ley Hipotecaria tampoco impone

---

[11] Campuzano, a diferencia de la mayoría de los tratadistas, piensa que aún cuando se notifique a la aseguradora de la existencia de la hipoteca, el pago al propietario siempre es válido ya que el Legislador nunca lo ha calificado como nulo. Ob. cit., pág. 154.

al propietario de la finca (ni al acreedor hipotecario), obligación expresa de comunicar al asegurador la existencia de la hipoteca. Roca Sastre, al comentar los Arts. 109 y 110 de la Ley Hipotecaria española –idénticos a los Arts. 160 y 161 nuestros– nos orienta:

> "...la empresa aseguradora no debe preocu-parse de averiguar si sobre la finca siniestrada pesa alguna hipoteca, de modo que puede satisfacer al propietario, con plenos efectos liberatorios, el importe de la indemnización correspondiente, sin intervención alguna del acreedor hipotecario, resultando bien hecho tal pago. Solamente cuando medie notificación, queda vinculada la empresa aseguradora en el sentido de no poder efectuar dicho pago sin el consentimiento del acreedor hipotecario, procediéndose al mencionado depósito o consignación." Ob. cit., pág. 579.

Vemos pues, que los artículos 160 y 161 de nuestra Ley Hipotecaria no son obstáculo para resolver que si el asegura-dor está consciente del derecho hipotecario, no puede pagar la indemnización al dueño de la propiedad sin el consenti-miento del acreedor. Otra vez, Roca Sastre nos ilustra: "[L]a ley no habla de cuando la indemnización por seguro haya de hacerse efectiva después de vencida la hipoteca que grava la finca siniestrada. En este caso habrá

---

En el otro extremo, Pérez González estima que no se libera de responsabilidad el asegurador que haya hecho el pago al propietario, aún cuando **no** tuviera notificación de que la propiedad estuviese gravada. Considera al acreedor asegurado titular o co-acreedor de la indemnización. Roca Sastre y Roca-Sastre Muncunill, Ob. cit., pág. 579. El asegurador no está obligado a procurarse conocimiento de la existencia de la hipoteca, es sujeto pasivo receptor de la declaración de conocimiento. Blanco Gasco, Ob. cit., págs. 70-72.

que distinguirse según que haya habido o no notificación al asegurador, de modo que si no se ha efectuado, éste paga bien la indemniza-ción por seguro verificándolo al propietario, aunque no concurra el acreedor hipotecario." Roca Sastre y Roca-Sastre Muncunill, Ob. cit. pág. 579. Puig Brutau comenta que en el caso de la obligación garantizada vencida "no hay duda que, si no ha habido notificación, el asegurador puede pagar al propietario." Ob. cit., págs. 134- 135.

En las palabras de Díaz González.

"[S]i después de hecha la notificación la Compañía aseguradora paga directamente al deudor y éste no satisface al acreedor sus legítimos intereses, **la Compañía habría pagado mal y tendría que volver a satisfacer el crédito hipotecario.** Es evidente también que si el acreedor olvida hacer la notificación y la Compañía aseguradora paga al dueño-deudor, paga bien y quedará totalmente liberada." Díaz González, C., Iniciación a los Estudios de Derecho Hipotecario, T. III, Madrid, 1967, pág. 67. (Enfasis suplido).

III

Lo expuesto nos lleva al problema de la notificación y a precisar si efectivamente la Eagle Star Ins. Co. fue notificada de la existencia del **Banco Gubernamental** como acreedor hipotecario de tal forma que estaba impedida de pagar a **La Esperanza**.

Nuestra Ley Hipotecaria, como tampoco la española, establecen un método específico de notificación. No requie- ren una notificación formal ni mencionan ni excluyen el conocimiento informal. Notificar es "dar extrajudicialmente

noticia de una cosa o suceso". Rivera García, I., Diccionario de Términos Jurídicos, New Hampshire, Equity, 1976. Es hacer saber, **poner en conocimiento**. Diccionario de Derecho Civil, T. II, Editorial Aranzadi, S.A., 1984, págs. 251-252.

El propósito del Art. 161 radica "...no tanto en el hecho de la notificación cuanto en la **puesta de conocimiento del asegurador de la existencia de la hipoteca sobre la finca asegurada y siniestrada.**" Blasco Gasco, Ob. cit., pág. 71 (Enfasis suplido). La declaración de conocimiento persigue evitar el perjuicio al acreedor hipotecario, y asegurar la garantía hipotecaria. Si el asegurador **no conocía la existencia del gravamen hipotecario** sobre la finca asegurada y objeto del siniestro, el pago que efectúe será válido y eficaz.[12] El conocimiento del asegurador basta para que no pague la indemnización al deudor sin obtener el consenti-miento del acreedor hipotecario. **Es suficiente que el asegurador tenga conocimiento -aunque motu proprio- de la existencia de la hipoteca.** El hecho de no observarse determinada forma de notificación, no lo exime de abstenerse de realizar el pago de la indemnización al deudor

---

[12] Campuzano, en abierta crítica a esta norma expresa: "[c]omo la ley no prohíbe que el asegurador pague al propietario el importe del siniestro, siendo este pago válido, sucederá muchas veces que cuando el acreedor tenga conocimiento del hecho ha quedado imposibilitado para ejercitarle." Campuzano y Horma, Ob. cit., págs. 153-154.

sin obtener el previo consentimiento del acreedor hipotecario.

En el caso de autos la aseguradora Eagle Star Ins. Co. tuvo **conocimiento real** por parte del **Banco Gubernamental** de que la propiedad estaba hipotecada a su favor. Desde el 30 de noviembre de 1988, le notificó que tenía interés como acreedor en la propiedad al **específicamente** colocarla bajo su póliza de seguro IM-300641, cuyo fin especial, con pleno conocimiento de la Eagle Star Ins. Co., era asegurar las propiedades en las cuales el **Banco Gubernamental** era acreedor hipotecario. La aseguradora expidió cubierta sobre **La Esperanza** bajo esta póliza general. Así Eagle Star Ins. Co. extendió dos pólizas y aseguró la **misma propiedad**: una a favor del **Banco Gubernamental** bajo la póliza maestra y de exceso y, una primaria a favor de **La Esperanza**. La póliza maestra protegía al **Banco Gubernamental** de pérdidas en propiedades hipotecadas a su favor, que el propietario omitió asegurar. Evidentemente, por notificación directa, o motu proprio, Eagle Star Ins. Co. conoció que el **Banco Gubernamental** era acreedor. Así se desprende indubitadamente del acto de emitir un primer pago parcial a favor de **La Esperanza** y **el Banco Gubernamental.**

A pesar de que el **Banco Gubernamental** no reclamó hasta marzo de 1990, al emitir el cheque 11258 antes de febrero de 1990 la aseguradora había reconocido que éste tenía un interés en la propiedad. Aún así, nos dice que "verificó a

través de su Departamento de Suscripción la existencia de algún interés del Banco [Gubernamental] en la póliza de **La Esperanza** y no encontraron ninguno..." **No convence.** Si efectivamente verificó y no encontró mención alguna de que el **Banco Gubernamental** era acreedor hipotecario bajo esa póliza, y por ende, ignoraba el interés de dicho Banco en la propiedad siniestrada, ¿cómo explica la emisión del primer cheque de pago parcial a nombre de **La Esperanza** y **el Banco Gubernamental**? Incluso el segundo cheque hecho bajo la reclamación de **La Esperanza también se hizo a favor del Banco Gubernamental entregándosele directamente al Banco, no al asegurado**.

En resumen, la notificación que le dio el **Banco Gubernamental** en el 1988 a la Eagle Star Ins. Co., y el conocimiento que ésta adquirió son suficientes para responsabilizarla.

Según expuesto, **vencida la obligación asegurada**, el propietario del bien hipotecado no es acreedor a la indemnización. Corresponde al acreedor hipotecario, protegido por el Art. 160, la disposición general del Art. 161 y la figura de la subrogación real. Este se subroga en lugar del deudor y debe recibirla directamente.

En el caso de autos, Eagle Star Ins. Co. pagó erróneamente. Conforme el Art. 1116 de nuestro Código Civil[13], el pago hecho **equivocadamente no** extingue la obligación.

---

[13] "El pago deberá hacerse a la persona en cuyo favor

IV

Eagle Star Ins. Co. argumenta también que "...pagarle nuevamente al Banco resultaría en pagarle dos veces por el mismo concepto pues el producto del pago se utilizó para reparar parcialmente la propiedad hipotecada..." **No tiene razón.** Para que pueda hacer el pago antes de que la obligación garantizada esté vencida, la Ley Hipotecaria requiere el acuerdo entre el acreedor hipotecario y el propietario. Ahora bien, **una vez vencida la obligación,** la situación varía, pues el **Banco Gubernamental** era el **único** acreedor facultado a recibir el dinero y acreditarlo a la deuda. **La Esperanza,** como deudora, estaba impedida de utilizar el importe de la indemnización para efectuar reparaciones en la propiedad, a menos que el **Banco Gubernamental,** como acreedor lo hubiese autorizado. Roca Sastre y Roca-Sastre Muncunill <u>Ob. cit.,</u> 575-576, (nota al calce Núm. 2).

**No podemos olvidar que el propósito del seguro es que la propiedad que sirve de garantía al préstamo hipotecario no quede devaluada por los daños causados por un siniestro.** Bajo la figura de la subrogación real, el dinero en sí, viene a sustituir o reemplazar, total o parcialmente la cosa hipo-tecada. Roca Sastre y Roca-Sastre Muncunill, <u>Ob. cit.,</u> pág. 574. Aquí, el inmueble en su integridad original

---

estuviese constituida la obligación, o a otra autorizada para recibirlo en su nombre." (31 L.P.R.A. sec. 3166).

garantizaba la hipoteca en el estado que tenía cuando se constituyó. La ley protege y regula los cambios que sufre la propiedad mien-tras ésta garantice el crédito. Campuzano y Horme, Ob. cit., pág. 148. Bajo la subrogación real se sustituye la garantía hipotecaria o **parte de ésta** por otro bien; la indemnización concedida por siniestro.

Nuevamente Roca Sastre nos dice: "La aplicación de la subrogación real hipotecaria a las indemnizaciones por razón del seguro de la cosa gravada siniestrada se explica, pues, fácilmente, ya que el siniestro ha venido a efectuar la conversión o transformación de la cosa hipotecada, en dinero, que es precisamente el objetivo que persigue la ejecución hipotecaria." Roca Sastre y Roca-Sastre Muncunill, Ob. cit., pág. 575.

A su vez, Puig Brutau expone que "[l]as indemnizaciones concedidas o debidas al propietario por razón de los bienes asegurados es lo que sustituye a la finca en el patrimonio del propietario indemnizado, y es justo, por tanto, que también la sustituya como objeto de derecho de hipoteca. La Ley impone en este caso la subrogación real, que es la permanencia del derecho sobre el nuevo objeto que ha sustituido al antiguo." Ob. cit., pág. 133.[14]

---

[14] Este precepto de subrogación ha estado presente en el Derecho Español desde las leyes de Partida. Entre las razones expuestas en la Exposición de Motivos de la Ley Hipotecaria, la subrogación real se justificó por fundamentos de equidad. El legislador entendió que al acreedor no poder obligar al deudor ampliar la hipoteca si sufriera menoscabo, como justa compensación, debería

La mayoría de los tratadistas no tienen duda de que en el caso de la hipoteca y la subrogación real por las indemnizaciones por seguro, la Ley Hipotecaria "no faculta al dueño de la finca siniestrada para **reconstruirla** o sustituirla con otra, sino que sujeta **siempre** a la hipoteca el importe de la indemnización por seguro." Roca Sastre y Roca-Sastre Muncunill, Ob. cit., págs. 575-576, (nota al calce Núm. 2). (Enfasis suplido). La situación es diferente en Alemania, Suiza e Italia, donde el derecho del acreedor sobre la indemnización cesa si ésta se utiliza para reconstruir. Ibid. Aunque esta norma puede criticarse, refleja la realidad del derecho hipotecario español y por analogía, el nuestro.[15]

---

beneficiarse de los cambios positivos que sufra el inmueble. Beraud, F. y Lezón Fernández, M., Tratado de Derecho Inmobiliario, Vol. 2, Madrid, (1927), págs. 218-219.

[15] Debido a la naturaleza transitoria del gravamen hipotecario, la subrogación por indemnización se tiene que hacer en forma diferente al trato que se da con el censo. Roca Sastre y Roca-Sastre Muncunill, Ob. cit., pág. 575, (nota al calce Núm. 2). Por lo tanto, el propietario no
(continúa...)

(...continuación)
tiene la misma opción que tiene bajo el artículo 192 de nuestra Ley Hipotecaria. 30 L.P.R.A. sec. 2611.

Por otro lado, Chico y Ortiz piensa que por analogía, sí tendría esta opción. Ob. cit., pág. 1401.

Morrell y Terry señala que pocos tratadistas, entre éstos Aragonés, han identificado la figura como injusta. Estos pocos proponen que debería ser el dueño del inmueble el que decida qué hacer con la indemnización. Pero Morrell y Terry señala que bajo el ordenamiento español, igual al de P.R., el dueño no puede utilizar la indemnización para la

V

Una vez el Tribunal de Instancia determinó que la aseguradora Eagle Star Ins. Co. pagó mal y la indemnización garantizaba la obligación asegurada por la hipoteca del **Banco Gubernamental**, adoptó una de las teorías más aceptadas sobre la aplicación que se hace de la indemnización adjudicada a dicho acreedor hipotecario. La cuestión tampoco ha estado exenta de debate.

Algunos tratadistas opinan que bajo la Ley Hipotecaria, el acreedor tiene derecho a pedir que se le entreguen las indemnizaciones debidas al propietario en pago de su crédito. Campuzano y Horma, Ob. cit., pág. 153. Entienden que la ley exige que la indemnización se aplique, en primer lugar, a pagar la obligación garantizada por la hipoteca y el sobrante, si alguno, pertenece al propietario de la finca siniestrada. Díaz González, Ob. cit., pág. 66. Otros tratadistas enfatizan que la ley sólo provee que la hipoteca se extienda sobre la indemnización, pero por ser ésta un

---

reconstrucción o reposición de su finca sin la anuencia del acreedor. Aunque la propuesta de Aragonés podría ser ideal, no es práctica ya que nada ni nadie garantiza que el deudor utilice los fondos para reponer el bien hipotecado. El legislador escogió beneficiar al acreedor hipotecario, por lo que no se puede interpretar la ley de tal forma que se le pueda exigir al acreedor que renuncie su derecho prioritario sobre la indemnización para que otro cobre. Morrell y Terry, Ob. cit., pág. 726.

Campuzano y Horma, aunque también piensa que es una injusticia, reconoce que éste es el ordenamiento vigente. Ob. cit., pág. 153.

seguro monetario, no puede ser hipotecada. Argumentan entonces que se establece una **prenda en dinero**. Roca Sastre y Roca-Sastre Muncunill, Ob. cit., págs. 577-578; Puig Brutau, Ob. cit., pág. 134.

Según la figura de la **subrogación real**, el derecho de crédito dinerario o el dinero en sí sustituye o reemplaza, total o parcialmente, la cosa hipotecada. Roca Sastre y Roca-Sastre Muncunill, Ob. cit., págs. 574. Esta teoría la sigue Santorio Pasarelli y estudia Pérez González. Chico y Ortiz rechaza tener que entrar a si la indemnización se da en prenda o forma parte de la hipoteca. Ob. cit., pág. 1412. Otros piensan que "al quedar sustituido el objeto de la garantía por el valor pecuniario de la finca, es evidente que la acción hipotecaria habrá de dirigirse directamente a la efectividad de la cantidad consignada, sin otro límite que el marcado por el importe de la garantía." Cassio y Corral, Ob. cit., pág. 349.

Finalmente, sabido que como norma general, el pacto comisorio está prohibido, cuando el dinero sea el objeto del derecho de prenda, existe una "abreviatura de la realización de valor". No resulta necesaria la subasta. Una vez vencida la obligación, el crédito vencido y no satisfecho podrá hacerse efectivo en el dinero pignorado, a pesar del art. 1859 español. (Art. 1758 nuestro; 31 L.P.R.A. sec. 5003). Lacruz Berdejo, J.L., Elementos de Derecho Civil,

Tomo III, Vol. 2do., Barcelona, 1980, pág. 154.  Véase Puig Brutau, Ob. cit., págs. 25-26.

Ante esta interesante polémica en la glosa científica, favorecemos adoptar en nuestra jurisdicción el curso adjudicativo seguido por el Tribunal de Instancia, a saber, el acreedor hipotecario puede, **una vez vencida la obligación garantizada**, acreditar la indemnización por siniestro al crédito.  Sin embargo, si la obligación garantizada por hipoteca **no** estuviese vencida y el asegurador tuviese conocimiento de la garantía, por mandato del Art. 161 de la Ley Hipotecaria, la indemnización se hará en la forma que convenga más a los interesados.[16]  En caso de que las partes no llegaran a un acuerdo se consignará en el Tribunal y se tomarán las acciones pertinentes.  Esta norma es la que confiere más protección a los acreedores hipotecarios, sin inferir menoscabo o perjuicio sustancial a los derechos del propietario y sus otros acreedores.

En resumen, los Arts. 160 y 161 de la Ley Hipotecaria de 1979 no imponen al asegurador el deber de investigar o averiguar si una finca siniestrada está hipotecada.  Sin embargo, una vez en conocimiento, si realiza el pago al

---

[16] Reiteramos el principio rector de **buena fe** que siempre obliga a los contratantes.  González v. The Commonwealth Insurance Co., res. en 2 de mayo de 1996.  "Todo contrato tiene como pilar principal el principio de la buena fe contractual."  Arthur Young & Co. v. Vega, res. en 24 de mayo de 1994.

asegurado en **perjuicio del acreedor hipotecario,** el pago se considera mal hecho.

Se dictará sentencia confirmatoria y devolverán al Tribunal de Instancia los autos originales para la continuación de los procedimientos.


ANTONIO S. NEGRON GARCIA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eagle Star Insurance Co.
of Puerto Rico

    Demandante-recurrente


      v.                   RE-94-447      Revisión

La Esperanza Sugar Plantation
Corporation


    Demandada-recurrida


SENTENCIA



San Juan, Puerto Rico a 7 de abril de 1998


       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma al Tribunal de Primera Instancia. Se devolverán a dicho foro los autos originales para la continuación de los procedimientos.

       Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López inhibido. Los Jueces Asociados señores Hernández Denton y Corrada del Río no intervinieron.


               Isabel Llompart Zeno
           Secretaria del Tribunal Supremo